UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLO VARTINELLI,

                 Plaintiff,                      Case No. 18-cv-10964

v.                                        Paul D. Borman
                                        United States District Judge

ARAMARK CORRECTIONAL
SERVICES, LLC, ERIC FOSS, MELVIN
EDDY, RON ECKERT, ANNA BENSON,
SHEILA BROWN, and K. ROUNDS,
Jointly and severally,

                 Defendants.
_____/

<u>OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS (ECF NO. 7)</u>

       Plaintiff, currently incarcerated at the Macomb Correctional Facility ("MCF"),

files federal constitutional claims under 42 U.S.C. § 1983, alleging deliberate

indifference to medical and dietary needs, and also alleges state law claims of

intentional infliction of emotional distress and negligence. (ECF No. 1, Compl. Civil

Cover Sheet PgID 1.) More specifically, Plaintiff claims that Defendants have

repeatedly and deliberately exposed him to peanut butter and fish, substances that

were known to the Defendants to cause serious medical reactions in the Plaintiff.

Plaintiff alleges that Defendants "continued deliberate indifference" to his "medical

needs and dietary well-being" has caused Plaintiff to suffer fatigue, severe muscle pain, anaphylaxis, breathing problems, chest pain, and heart damage, among other medical conditions.

In lieu of filing Answers to Plaintiff's Complaint, Defendants have filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7.) Plaintiff filed a Response (ECF No. 9) and Defendant filed a Reply (ECF No. 10). For the reasons that follow, the Court GRANTS the motion to dismiss.

## I.    FACTUAL BACKGROUND

Plaintiff alleges that Defendant Aramark provides food services to prisoners under the jurisdiction of the Michigan Department of Corrections ("MDOC") under a 2009 contract, and specifically provides food services under that contract to Plaintiff and others incarcerated at the MCF. (Compl. ¶ 6.) Plaintiff alleges that the individual Defendants held the following positions as relevant to his claims: Eric Foss was the Chief Executive Officer of Aramark; Anna Benson was employed by Aramark as a Food Services Director, to provide food services to MDOC prisoners, including the Plaintiff; Sheila Brown was employed by Aramark to provide Food Services to MDOC prisoners, including the Plaintiff; Melvin Eddy was employed by Aramark as a Food Services Director to provide food services to MDOC prisoners, including the

Plaintiff; Ron Eckert was employed by Aramark to provide Food Services to MDOC prisoners, including the Plaintiff; K. Rounds was employed by Aramark to provide Food Services to MDOC prisoners, including the Plaintiff. (Compl. ¶¶ 7-17.) Plaintiff alleges that each of these individual Defendants was acting within the scope and course of their employment with Aramark and were acting at all times under color of state law pursuant to the contract between Aramark and MDOC. (Compl. ¶¶ 18-19.)

Plaintiff alleges that for "several years, MDOC records document Plaintiff's allergies to peanut butter, fish and iodine and medically prescribed Special Accommodation Orders direct that he not be provided with, or exposed to, fish or peanut butter." (Compl. ¶ 25, Exs. H, I.) Exhibit H attached to Plaintiff's Complaint suggests approximately nine (9) instances, between 1998 and 2014, of Plaintiff experiencing and being treated for acute allergic reactions from exposure to fish, and less commonly to peanut butter, at a series of different MDOC correctional facilities. On at least one occasion the source of the exposure was another inmate cooking fish and not Aramark or the MDOC's preparation or service of an allergen to the Plaintiff. There appears to be no dispute that when exposed, Plaintiff did suffer acute and non-trivial reactions. In some instances Plaintiff was treated effectively at the correctional facility but in some instances Plaintiff was taken by EMS for treatment at a hospital

for anaphylactic reactions to the smell of fish. (Ex. H, PgID 63, 64, 68, 70, 71, 73, 78, 81, 83.)[1]

Exhibit H also documents numerous efforts over these years on the part of both the MDOC and Aramark to address Plaintiff's serious allergic reactions to these allergens and to isolate him from such exposures. Among the efforts to prevent allergic occurrences were the following: Plaintiff was given authorization to be served his meals in his housing unit (and not required to be present in Food Services) (Ex. H, PgID 65); notice was disseminated to all prison staff that Plaintiff was not to be present in any buildings where fish was being prepared, stored, or consumed (Ex. H, PgID 66); Plaintiff was authorized to have a fan in his cell (Ex. H, PgID 78); multiple accommodations were written for Plaintiff to be served no food items containing fish or peanut butter (Ex. H, PgID 73, 78); directives were given that Plaintiff never be "called out" close to where fish was being prepared or served, that Plaintiff have a fan in his cell at all times, that he continuously be served meals in his cell, and that he have EpiPens on hand for emergencies. (Ex. I, PgID 85-86.)

Plaintiff's Complaint in this action relates to six instances of alleged exposure

---

[1] Plaintiff makes no complaints in this action about the treatment he received when he did suffer an allergic reaction. There is no claim that any Defendant failed to provide him with adequate medical care when he suffered an allergic reaction. His claims all relate to what he perceives as a failure to prevent the exposures that resulted in allergic reactions.

to these allergens between January 2014 and January 2015. Plaintiff alleges that he filed six grievances between January 25, 2014, and January 3, 2015, that describe the conduct of the Defendants that Plaintiff alleges amounted to deliberate indifference to his medical needs and dietary restrictions.

A January 25, 2014 grievance states that Defendant Eddy, the Aramark food services director, is "fully aware" that Plaintiff suffers from "life threatening allergies to the smell of fish," but continues to allow Plaintiff to be exposed to or served fish and peanut butter. Eddy responds to this grievance, stating that Plaintiff has a standing order that clearly states no peanut butter or fish and that cooks must follow these restrictions at all times. (Compl. Ex. A, PgID 17-19.)

A June 30, 2014 grievance states that "Aramark's Food Services served me salmon fish fillets in my tray knowing that I am severely allergic to such food substance." (Compl. Ex. B, PgID 23.) Plaintiff states that "Aramark's Food Director Melvin Eddy and Food Services Assistant Mr. Ron Eckert, personally spoke to Plaintiff and admitted being fully aware about the severity of my food allergies [and] assured me that such harmful food-substances will not be placed on my food again." (*Id*.) Plaintiff alleges that despite their knowledge of his condition, Plaintiff continues to be served food containing peanut butter and fish. (*Id*.) Defendant Eckert responds that Plaintiff "should not be served foods to which he is allergic," and notes that

"special diet menu slips have been requested from MDOC" and "until they arrive Plaintiff's trays will be checked to verify they are correct." (Compl. Ex. B, PgID 25.) Defendant Eddy reviewed the grievance response. (*Id*.)

An October 12, 2014 grievance states that "Aramark Food Services located at [MCF] <u>again</u> sent Plaintiff <u>peanut-butter</u>." (Compl. Ex. C, PgID 30.) Plaintiff states that this is despite Defendants Eckert and Eddy "repeated promise that 'It will not happen again.'" (*Id*.) The grievance response acknowledges that Plaintiff "does in fact have a documented food allergy and is on an in house feeding only detail that calls for no fish or peanut butter." (*Id*. at PgID 32.) The grievance response acknowledges that "there has been occasion that mistakes have been made," and "on several occasions Aramark did deliver trays to Plaintiff which did include fish and peanut butter which he is highly allergic to and has a medical detail to have meals in due to his severe allergy to the items." (*Id*.) The grievance response goes on to state that "the facility has spoken with Aramark staff about the severe nature of this issue and that swift action needed to be taken." (*Id*.) The response states that "the individual inmate worker who is responsible for the incident on October 10, 2014 has been handled administratively." (*Id*.) The response states that "Aramark has spoken to all of their staff to ensure they understand the seriousness of the issue and have created a diet slip for the diet cooks to follow to minimize the risk of getting the

wrong items on the tray." (*Id*.) The response concludes that "Aramark staff will continue to monitor for compliance of the medical order." (*Id*.)

A December 12, 2014 grievance was filed against Defendant Benson, Aramark's Food Services Director and Defendant Brown, Assistant Food Services Director, states that on December 12, 2014, Plaintiff was served food containing fish and suffered a violent allergic reaction, for which he received treatment at MRF's health services. (Compl. Ex. E, PgID 43 – Plaintiff appears to have confused Exhibits D and E, as Exhibit E appears to be the December 12, 2014 grievance and Exhibit D appears to be the December 24, 2014 grievance.) Plaintiff claims that since his arrival at the MRF facility, he had been served peanut butter three times, and suffered violent allergic reaction. (*Id*. PgID 43.) The grievance states that Defendant Benson "simply stated that she <u>will</u> <u>not</u> accommodate any medical dietary needs until a dietician would instruct her to do so." (*Id*.) The grievance states that "in spite of my medical orders, in spite of [] been informed about the potential risks to my health and safety, in spite of knowing the gravity and consequences of their actions, Ms. Benson and Ms. Brown chose to intentionally act with deliberate indifference, and disregard for the pain and suffering their actions ha[ve] been subjecting me to." (*Id*. at PgID 44.) The grievance response states that the Food Services director had not received the diet detail for the Plaintiff, who had recently been transferred to the MRF facility, and scheduled a

meeting with the dietician and health care per MDOC guidelines." (*Id*. at PgID 44.)

A December 24, 2014 grievance, states that on December 24, 2014 Plaintiff was served peanut butter and suffered a severe allergic reaction and on December 26, 2014, was served a turkey sandwich with nothing on it instead of fish and on December 27, 2014, was served "a purported chicken salad" and was being deprived of food. The grievance states that Defendants Benson, Brown and Rounds (all Food Service Directors or Assistant Directors) have "refused to do their job," and that Defendants Foss and "Aramark's President," are "fully aware of their employees conduct and have equally acted with deliberate indifference. (Compl. Ex. D, PgID 37.) This grievance states that Defendant Benson retaliated against the Plaintiff for "engaging in protected conduct." (*Id*. at PgID 39.) Plaintiff states that Defendant Benson "<u>does</u> <u>not</u> know what is going on in food services," but is "ultimately responsible for whatever food is provided to prisoners." (*Id*.)

Finally, a January 3, 2015 grievance states that as a result of Defendants Benson, Brown, and Rounds' "continuous refusal to honor and follow [Plaintiff's] medically prescribed diet, [he] was served food contaminated with peanut butter which caused [him] to suffer an allergic reaction." (Compl. Ex. F, PgID 50.) The grievance states that Defendant Benson refused to acknowledge that Plaintiff had been served peanut butter and retaliated against him for complaining by sending "her staff"

to harass Plaintiff. (*Id.*) Plaintiff states that Defendant Benson had been handed Plaintiff's "Special Accommodation Notice" indicating his allergy to fish and peanut butter "more than four times," and did not need a dietician to indicate that fish and peanut butter should not be served on Plaintiff's trays. The December 24, 2014 grievance response noted that "health care has contacted Aramark Food Service director Benson and emailed Mr. Willard, Dietician, to request therapeutic diet as of 12/21/14." (PgID 37.) Plaintiff states in his grievance that everyone knew about his allergies and there was no need to request a therapeutic diet. (*Id.* PgID 51.) Plaintiff alleges that Ms. Benson is "ultimately responsible for any food that is provided to prisoners," and asserts that "Ms. Benson **does not** know what is going on in food services." (*Id.* PgID 38) (emphasis in original).

Plaintiff alleges that on the dates of these six grievances, "Defendants knowingly withheld from subordinate kitchen workers the fact of Plaintiff's allergies and the medically prescribed Special Accommodation Orders." (Compl. ¶ 29.)

Finally, Plaintiff filed a grievance on August 2, 2014, complaining that on July 31, 2014, he tried to speak to "Aramark's Food Inspector and she refused to speak to me." (Compl. Ex. G, PgID 56.) Plaintiff did not grieve any specific incident but complained that "at least 15 times" fish and peanut butter had been served to him by "staff at MCF's Food Services," exposing him to reactions "lethal to his health." (*Id.*)

The grievance response stated that Plaintiff had been transferred to a different correctional facility and his request to meet with MCF Food Services could therefore not be accommodated. (*Id.*)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right

to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has observed that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (Internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records,

matters of which a court may take judicial notice, and letter decisions of governmental agencies."); *Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003).

## III. ANALYSIS

### A. Plaintiff Has Plausibly Alleged That Aramark is a State Actor

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges that "Aramark was engaged under a 2009 contract with MDOC to provide meals and food services to prisoners under the jurisdiction of the MDOC, including Plaintiff and others residing at the MCF in the Eastern District of Michigan." (Compl. ¶ 6.) Plaintiff further alleges that "[a]t the time of the events detailed in this Complaint, [the individual Defendants] were acting under color of state law pursuant to the contract between

Aramark and MDOC." (Compl. ¶ 19.) Assuming, as the Court must at this motion to dismiss stage, the truth of these allegations, Plaintiff has plausibly alleged that Aramark is a state actor.

"In the context of medical services, the Sixth Circuit has stated that 'it is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting under color of state law.'" *Dykes v. Marshall*, No. 14-cv-1167, 2016 WL 1059618, at *3 (W.D. Mich. March 17, 2016) (quoting *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993)). "Based on this reasoning, court[s] have allowed prisoners to proceed on § 1983 claims against Aramark employees." *Id*. (citing *Mills v. Aramark Corp*., No. 1:15-cv-610, 2015 WL 7820872, at *3 (S.D. Ohio Nov. 10, 2015); *Horn v. Hunt*, No. 2:15-cv-220, 2015 WL 5873290, at *4–5 (S.D. Ohio Oct. 8, 2015) ("rejecting Aramark employee's assertion that he was not a state actor for purposes of § 1983 because Aramark assumed the state's obligation to provide food service to inmates")). *See also McDaniel v. Bechard*, No. 15-cv-13892, 2017 WL 3699762, at *3 n. 6 (E.D. Mich. Aug. 2, 2017) ("Defendants were affiliated with Aramark, which contracted with the MDOC to provide food to inmates—an obligation borne by the State which numerous courts have found sufficient to confer "state actor" status.") (citing *Horn*, *supra*). Plaintiff has adequately alleged state action as to

Aramark and as to each of the Defendant Aramark food service workers.

**B.      Plaintiff Fails to Allege a § 1983 Eighth Amendment Claim**

**1.      The deliberate indifference framework.**

"The constitutional right at issue [here] arises from the Eighth Amendment's prohibition on cruel and unusual punishment because [Vartinelli] was serving a criminal sentence at the time [of the alleged unconstitutional conduct]." *Shadrick v. Hopkins County, Ky.*, 805 F.3d 724, 737 (6th Cir. 2015). The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The test for determining whether an officer was deliberately indifferent has both a subjective and an objective component. *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001).

The objective component is satisfied if the plaintiff alleges that the medical need at issue is "sufficiently serious." *Id.* at 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of*

*Salem*, 923 F.2d 203, 208 (1st Cir. 1990)) (emphasis in original).

To satisfy the subjective criterion, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. It is not enough for the plaintiff to allege that the officer should have recognized a serious medical risk existed. *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In § 1983 constitutional torts like this one, qualified immunity prevents government officials from being held liable if (1) the officers did not violate any constitutional guarantees or (2) the guarantee, even if violated, was not 'clearly established' at the time of the alleged misconduct." *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 992 (6th Cir. 2017), *rehearing en banc denied* (July 5, 2017), *certiorari denied* 138 S. Ct. 738 (Jan. 16, 2018) (citing *Pearson*, 555 U.S. at

232). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"When . . . a defendant raises qualified immunity as a defense . . . [t]he plaintiff has the burden of showing that a right is clearly established . . . [and] the defendant carries the burden of showing that the challenged act was objectively reasonable in light of the law existing at the time. In satisfying this burden, a defendant can rely on a reasonable mistake of fact, for [q]ualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact." *Harris v. Klare*, 902 F.3d 630, 637 (6th Cir. 2018) (internal quotation marks and citations omitted) (ellipses and alterations in original).

"Persons sued in their individual capacities under 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citations omitted). As the Supreme Court explained in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> [R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or

her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of a clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose [] liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

556 U.S. at 677. The Sixth Circuit has likewise "held that § 1983 liability must be based on more than *respondeat superior*, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 2005). "[I]t is well-settled that qualified immunity must be assessed in the context of each individual's specific conduct." *Stoudemire v. MDOC*, 705 F.3d 560, 570 (6th Cir. 2013) (quotation omitted). Therefore, "the question of whether an official possessed the requisite knowledge and culpable mental state to sustain a deliberate indifference claim 'must be addressed for each officer individually.'" *Id.* (quoting *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

### 2. Plaintiff's food-allergy based claim.

Several courts have recognized that food allergies may present a serious medical need under certain circumstances:

Courts have recognized two situations in which food allergies may constitute a serious medical need. The first is if the diet being served to an inmate poses a "sufficiently serious" injury or medical consequence to the inmate's health. *See, e.g., Sweeting v. Miller*, No. 7:14CV187, 2015 U.S. Dist. LEXIS 105839, at *8, 2015 WL 4773276 (W.D. Va. Aug. 12, 2015) (finding no claim where the only reaction inmate

17

suffered from eating a food he was supposedly allergic to was a swollen tongue); *Joseph v. Mercer Cty. Comm'rs*, No. 3:12-CV 0847, 2012 U.S. Dist. LEXIS 171097, at *35-36, 2012 WL 6018125 (N.D. Ohio Dec. 3, 2012) (no claim where plaintiff was allegedly served food he was allergic to but had no allergic reaction or other injury as a result).

Food allergies may also constitute a serious medical need if they prevent an inmate from receiving a nutritionally adequate diet. *See, e.g., Swinton v. Wright*, No. 3:16-cv-659 (SRU), 2016 U.S. Dist. LEXIS 83555, at *3-4, 2016 WL 3579075 (D.C. Conn. June 28, 2016); *Sweeting v. Miller*, 2015 U.S. Dist. at *7; *Escalante v. Huffman*, No. 7:10-cv-00211, 2011 U.S. Dist. LEXIS 81382, 2011 WL 3107751 (W.D. Va. July 26, 2011) (report and recommendation), adopted by 2011 U.S. Dist. LEXIS 90520, 2011 WL 3584992 (Aug. 15, 2011).

*Balcar v. Smith*, No. 16-cv-428, 2017 WL 380931, at *3 (W.D. Ky. Jan. 26, 2017) (footnote omitted), *aff'd Balcar v. Smith*, No. 17-5159, 2017 WL 3613479 (6th Cir. July 17, 2017). *See also Bailey v. Aramark Corp.*, No. 16-343, 2017 WL 3841687, at *3-4 (E.D. Ky. Sept. 1, 2017) ("An inmate's food allergies can present a sufficiently serious risk to the inmate's health in a variety of ways, such as where prison officials give the inmate unapproved food which causes a serious allergic reaction; or where only approved foods are given but they fail to provide adequate nutrition."); *Gambrell v. Weichart*, No. 15-cv-1146, 2017 WL 1194011, at *4 (E.D. Wis. March 30, 2017) (noting that courts "have found food allergies to be sufficiently serious when the prisoner shows substantial physical symptoms stemming from allergic reactions" such as "hives, throat swelling, itching, difficulty breathing, vomiting") (collecting cases); *Williams v. Horvey*, No. 14-cv-1289, 2014 WL 6657703, at *3 (S.D. Ill. Nov. 24,

2014) (finding that complaint asserting deliberate indifference to a food allergy sufficiently alleged a serious medical need where prison medical records documented the plaintiff's diagnosis of allergy to beans and eggs, which caused vomiting and problems breathing, requiring treatment with Benadryl); *Tate v. Bell*, No. 06-cv-00627, 2007 WL 1965592, at *5 (S.D. Ohio July 3, 2007) (acknowledging that "it is clear that an allergic reaction could constitute a serious medical need," but finding no documentation in the record with respect to the plaintiff's reactions and/or symptoms).

Defendants conceded at the hearing on the motion to dismiss, but only for purposes of the Court's resolution of their motion to dismiss, that Plaintiff's Complaint sufficiently alleges the objective component of the deliberate indifference analysis – i.e. that Plaintiff's allergies presented a serious medical condition. The Court also notes that it is documented in the prison records that Plaintiff attaches as Exhibits to his Complaint that on more than one occasion he was transported from prison via EMS to a hospital suffering from allergic reactions to fish and/or peanut butter. For example, when confined at the Brooks Correctional Facility, Plaintiff was transported to the hospital suffering from an anaphylactic reaction to the smell of fish that was apparently being cooked by another inmate near him in a microwave, causing him to become short of breath, break out in raised hives and a rash that caused severe itching. He was treated with Epinephrine, Benadryl , Tagament, and Prednisone and

given a prescription for an EpiPen. (Compl. Ex. H, PgID 62-63, Hackley Hospital Emergency Room Record.) The Exhibits attached to Plaintiff's Complaint reflect additional similar instances, most of which were adequately treated through the prison healthcare services, although there were additional incidents that did require transport to a hospital. (Compl. Ex. H, PgID 64.) These serious medical reactions supply the facts that the Sixth Circuit recognized in *Balcar could* constitute a serious medical condition but which the Sixth Circuit found lacking in that case. 2017 WL 3613479, at *2. Thus, for purposes of analysis, the Court assumes that Plaintiff has satisfied the objective component of the deliberate indifference analysis.

Thus, the focus here is on the subjective component and more specifically "on whether each individual [Defendant] had the personal involvement necessary to permit a finding of subjective knowledge." *Bishop v. Hackel*, 636 F.3d 757, 768 (6th Cir. 2011). The Court is required to "evaluate the individual liability of each [defendant] individually." *Id*. at 767. In this case, Plaintiff makes no distinction in his Complaint among the individual Defendants as to the circumstances surrounding any specific alleged incident of exposure to an allergen. Throughout the Complaint, the Defendants are referred to collectively. Specifically, Plaintiff lists six separate "instances in which Defendants provided Plaintiff or exposed him to peanut butter or fish," and alleges that "[o]n those dates, and in deliberate indifference to Plaintiff's

medical and dietary well-being, Defendants knowingly withheld from subordinate kitchen workers the fact of Plaintiff's allergies and the medically prescribed Special Accommodation Orders." (Compl. ¶¶ 28-29.) The Complaint contains no allegations that suggest the specific conduct of any particular Defendant about which Plaintiff complains. Thus, to the extent that the Exhibits attached to Plaintiff's Complaint related to the six instances that form the basis for his Complaint (Compl. Exs. A-F) offer some suggestion about the involvement of a particular individual Defendant, the Court will discuss and analyze that conduct separately.

Although it is no doubt frightening for Plaintiff to have to experience these allergic reactions in a correctional environment, in the end Plaintiff's Complaint simply fails to adequately allege the personal involvement or the subjective awareness of any of the individual supervisor Defendants in the instances of exposure about which Plaintiff complains in his Complaint. It is alleged and not disputed that there were standing orders regarding Plaintiff's need not to be served peanut butter or fish. However, there are no plausible allegations in the Complaint or that can be gleaned from the attached Exhibits, that any of these Defendants became aware that Plaintiff was going to be exposed to one of these allergens in violation of those standing orders and consciously chose to do nothing. There are many allegations that various individuals "knew" about Plaintiff's severe allergic reactions, and failed to prevent

further exposures. But, as discussed below, liability cannot be imposed on individuals under the Eighth Amendment based upon the conduct of their subordinates. "[L]iability must lie upon more than a mere right to control employees and cannot rely on simple negligence. There must be some conduct on the supervisor's part to which a plaintiff can point that is directly correlated with the plaintiff's injury." *Essex v. County of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).

Here Plaintiff alleges that "Aramark's Food Director Melvin Eddy and Food Services Assistant Mr. Ron Eckert, personally spoke to Plaintiff and admitted being fully aware about the severity of my food allergies [and] assured me that such harmful food-substances will not be placed on my food again." (Compl. Ex. B, PgID 23.) Plaintiff alleges that despite their knowledge of his condition, Plaintiff "continues to be served food containing peanut butter and fish." (*Id.*) Defendant Eckert states in a particular grievance response that Plaintiff "should not be served foods to which he is allergic," and notes that "special diet menu slips have been requested from MDOC" and "until they arrive Plaintiff's trays will be checked to verify they are correct." (Compl. Ex. B, PgID 25.) Defendant Eddy reviewed the grievance response. (*Id.*)[2]

---

[2] It is well accepted that a defendant's conduct in responding to a grievance cannot be the basis for liability under § 1983. *See, e.g. Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that participation in the grievance process, standing alone, cannot support a claim of individual liability under § 1983).

This grievance certainly demonstrates that Defendants Eddy and Eckert were aware of Plaintiff's allergic reaction to peanut butter and fish.  But far from demonstrating that Eddy and Eckert were deliberately indifferent to Plaintiff's severe allergic reactions, these records demonstrate that they took affirmative steps to ensure that Plaintiff was not exposed to those allergens.  Plaintiff alleges that despite the steps taken by these Defendants to ensure Plaintiff's safety, "he continues to be served food containing peanut butter and fish."  But importantly Plaintiff does not allege who is serving him that food containing those allergens – and certainly Plaintiff does not allege that any of the individual Defendants actually served him or prepared his food on any occasion. The MDOC even went so far as to inspect video of the food service line on a day when Plaintiff alleged that he was served peanut butter in his lunch meat food, specifically observed the preparation of Plaintiff's tray, and were unable to detect anyone placing peanut butter in Plaintiff's tray.  (Compl. Ex. F, PgID 53.)

Plaintiffs' Complaint throughout speaks collectively of the conduct of the "Defendants" and there are no allegations specifically related to any personal involvement of any of the individual Defendants in serving Plaintiff food or exposing him to the odor of food containing known allergens. While the Exhibits attached to the Complaint, and referenced in the allegations Complaint, do provide additional detail regarding those allegations, they fail to cross the plausibility threshold required

under *Twombly* and *Iqbal* to adequately allege an Eight Amendment claim. "In order for liability to attach to any of these supervisors, Plaintiff must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Plaintiff's Complaint contains no allegations that would plausibly suggest that any of the individual Defendants actually served Plaintiff the offending allergen food items or "encouraged or condoned" any food service worker's conduct in allowing Plaintiff to be served or exposed to fish or peanut butter. Nor do the Exhibits attached to the Complaint suggest the personal involvement of any Defendant in personally serving or exposing Plaintiff to these prohibited foods at any time.

Plaintiff alleges that Defendant Benson, "when faced with direct evidence that there was peanut butter in Plaintiff's food on one occasion," blamed Plaintiff and stated that "Aramark does not serve Plaintiff peanut butter." (Compl. Ex. F, PgID 50.) Plaintiff complains that Benson knew of Plaintiff's food allergies and was doing nothing to see that his food was free of these allergens. Importantly, Plaintiff asserts in his grievance that Ms. Benson is "ultimately responsible for any food that is provided to prisoners," and asserts that "Ms. Benson **does not** know what is going on

in food services." (*Id*. PgID 38) (emphasis in original). As discussed below, Ms. Benson cannot be held liable in her supervisory capacity, as the Director of Food services, for the actions of unidentified food service workers who allegedly placed peanut butter in Plaintiff's food despite standing orders that Plaintiff not be exposed to peanut butter. In fact, Plaintiff concedes that Ms. Benson did not become subjectively aware of the alleged contamination of his food in this particular instance by alleging that Benson "does not know" what goes on in food service.[3]

---

[3] Plaintiff does not specify the capacity in which he sues the individual Defendants and the Complaint does not assert a separate municipal liability claim. Nothing in Count I, which sets forth Plaintiff's § 1983 claims, purports to be an official capacity/failure to supervise/train claim against any of the individual Defendants in their official capacities. *See, e.g., Harvey v. Campbell County, Tenn*., 453 F. App'x 557, 563 (6th Cir. 2011) (explaining that an entity's "liability may be premised on its policymaker's deliberate indifference" under certain circumstances); *Essex v. County of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013) (explaining that a failure to supervise claim against a municipality "would implicate the conduct of a defendant supervisor insofar as he acted with deliberate indifference in his official capacity as a policymaker"). The closest Plaintiff comes to such an allegation in Count I is the assertion that "Defendants" (again collectively pleaded) "willfully fail[ed] to advise subordinate food service personnel of Plaintiff's allergies." (Compl. ¶ 35.) The Complaint contains no factual content at all regarding how food service workers were informed of Plaintiff's allergies or how they were supervised and this conclusory allegation fails to satisfy the *Twombly/Iqbal* plausibility standard. "[I]t is not reasonable to draw inferences . . . of inadequate training, deliberate indifference and causal effect from the mere fact that [Plaintiff was served or exposed to fish or peanut butter]." *Harvey*, 453 F. App'x at 568. Even were the Court to interpret this as an inartful effort to plead a policy claim against the Defendants in their official capacity as Aramark supervisors "mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference." *Harvey*, 453 F. App'x at 563. Plaintiff's allegations fall

25

The allegations of the Complaint and the attached exhibits demonstrate that Defendants Eddy and Eckert responded to Plaintiff's grievances by ordering that he be served a special diet that did not ever contain fish or peanut butter. Plaintiff's Complaint alleges that Defendant Foss is "the Chief Executive Officer (CEO) of Defendant Aramark." (Compl. ¶ 7.) In a grievance attached as an Exhibit to his Complaint, Plaintiff asserts that Defendants Foss and "Aramark's President," are "fully aware of their employees conduct and have equally acted with deliberate indifference." (Compl. Ex. D, PgID 37.) Allegations of an "awareness" of another's conduct are insufficient to state a claim under § 1983. Claims that supervisory officials "were aware of alleged [unconstitutional conduct] but did not take appropriate action . . . [are] insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Hayden*, 853 F.2d 418, 429 (6th Cir. 1988). "'Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability.'" *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005)). "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "'At a minimum, a § 1983 plaintiff must

_____

woefully short of plausibly suggesting such a claim.

show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Grinter*, 532 F.3d at 575 (quoting *Bellamy v. Bradley*, 729 F.3d 416, 421 (6th Cir. 1984)).  As the Sixth Circuit summarized in *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016),

> It is well-settled that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior." *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937. In other words, a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another. *See Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir.2006). Consequently, a mere failure to act will not suffice to establish supervisory liability. *Id.*; *see also Essex,* 518 Fed. Appx at 355. There must be some conduct on the supervisor's part to which the plaintiff can point that is directly correlated with the plaintiff's injury."). We have long held that supervisory liability requires some "active unconstitutional behavior" on the part of the supervisor. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *see also Hays v. Jefferson Cty.*, 668 F.2d 869, 873–74 (6th Cir. 1982) (A "mere failure to act (even) in the face of a statistical pattern of incidents of misconduct" is not sufficient to confer liability) (internal quotation marks omitted).

818 F.3d at 241-42 (footnote omitted).

Plaintiff in this case is represented by counsel, yet the Complaint contains threadbare collective allegations against "Defendants" and the Plaintiff's vaguely worded, very brief Response to Defendants' motion to dismiss does nothing to expand upon the nature of the Plaintiff's claims.  With bald assertions such as "Defendants, acting under color of state law, denied Plaintiff the rights and protections provided by

the First, Eighth, and Fourteenth Amendments," and "Defendants knew of his allergies but intentionally exposed him to toxins, compromising his health," Plaintiff gives no greater insight into the factual bases for his claims. (ECF No. 9, Pl.'s Resp. 7, PgID 13.) Plaintiff does not even separately address in his Response the conduct of any individual Defendant or offer any separate analysis of the objective and subjective components of his deliberate indifference claim. The most that Plaintiff offers in his Response is the generalization that Defendants Foss, Eddy, and Benson "are being sued for their own personal actions . . . because Plaintiff requested of each that they stop exposing him, and they all refused to discuss the matter and, with deliberate indifference, chose not to stop." (Pl.'s Resp. 9, PgID 159.)[4] This is the extent of the factual elaboration and Plaintiff's Response reveals nothing about any active unconstitutional conduct on the part of any of these Defendants, complaining only that collectively "they did [nothing] to stop the practice." (*Id*. PgID 159.) Such

---

[4] Plaintiff does not even mention the names of the other individual Defendants – Eckert, Brown, and Rounds – or respond to the motion to dismiss them from this action. Plaintiff is thus deemed to have abandoned any claims against Eckert, Brown, and Rounds. "The Sixth Circuit has held that a party's failure to respond to or oppose an issue raised in a Rule 12(b)(6) motion may result in waiver of the issue." *Hazime v. Fox TV Stations, Inc.*, No. 12-cv-15072, 2013 WL 4483485, at *8 (E.D. Mich. Aug. 19, 2013) (quoting *Simpson v. G4S Secure Solution (USA), Inc.*, No. 12-2875, 2013 WL 2014493, *3 (W.D. Tenn. May 13, 2013) (citing *Allstate Ins. Co. v. Global Med. Billing, Inc.*, No. 12–1263, 2013 WL 1405142, *3 (6th Cir. Apr.8, 2013); *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008)).

allegations of failures to act are insufficient to state an individual liability deliberate indifference claim under § 1983.

While Plaintiff alleges (and in fact Defendants concede) that some mistakes (Plaintiff identifies six such instances in this Complaint) were made in the service of over 1,000 meals to the Plaintiff over the course of a year and Plaintiff *was* served or exposed to foods to which he was allergic, there is no allegation that any of these Defendants actually served or exposed Plaintiff to these allergens or that any of the individual Defendants in these six instances *knew or were aware* that food service workers were serving Plaintiff fish or peanut butter or exposing him to these foods. "[D]espite evidence that [Aramark] officials might have imperfectly implemented the [allergy] requirements, or were even negligent, there was no basis to conclude that any of the defendants deliberately [served or exposed Plaintiff to the offending foods]." *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (internal quotation marks and citation omitted). Plaintiff claims that these Defendants failed to prevent other food service workers from serving Plaintiff fish and/or peanut butter. Plaintiff has failed to adequately allege either the personal involvement or the subjective awareness of any of the individual Defendants in the six instances of exposure that form the basis for his Complaint as would be sufficient to state a claim of deliberate indifference against any one of them individually under § 1983. "Plaintiff[] ha[s] not, therefore,

carried [his] burden of showing that the individual defendants are not entitled to qualified immunity from liability in their individual capacities." *Harvey*, 453 F. App'x at 564.

### C.   Plaintiff Fails to Allege a § 1983 First Amendment Claim

Plaintiff's barebones Complaint states three separate claims: Count I - "Violation of Civil Rights;" Count II - "Intentional Infliction of Emotional Distress;" and Count III - "Negligence."   In Count I, Plaintiff conclusorily asserts that "Defendants violated Plaintiff's rights under the First, Eighth, and Fourteenth Amendments." (Compl. ¶ 35, PgID 8.)  The vast majority of Plaintiff's allegations relate to his Eight Amendment claim.  The only allegation that could potentially be related to a First Amendment claim states in full: "Defendants violated Plaintiff's rights under the First Amendment . . . by . . . retaliating against Plaintiff for protected activity." (Compl. ¶ 35(a).)  Plaintiff does not allege any facts regarding the nature of this "protected activity" and does not describe which Defendants knew about this undefined protected activity, or what retaliatory conduct any Defendant took in response to this undefined protected activity.   Defendants interpret Plaintiff's reference to the First Amendment to be an effort to state a First Amendment retaliation claim based on the six grievances identified in Plaintiff's Complaint, and they direct their motion to dismiss to such a claim.  Plaintiff's four-sentence response in support

of his First Amendment Retaliation claim does nothing more than reiterate the barebones allegations of the Complaint, stating in full as follows: "Plaintiff's earlier complaints against Aramark fall well within the First Amendment right to petition Government for redress of grievances. His continued exposure to toxins, accelerating after he complained, is adverse action, which reasonable jurors may conclude, was motivated at least in part by Vartinelli's complaint about the same entity that retaliated." (Resp. 6, PgID 156.) But as to who "continued" to expose him or how they exposed him, we are left to speculate.

"'[A]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). To state a First Amendment retaliation claim, a Plaintiff must allege facts establishing that:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id*. at 262 (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

No factual allegations appear in the Complaint that would satisfy the *Twombly/Iqbal* plausibility standard as to any alleged First Amendment claim. Plaintiff does not define the protected activity and does not identify which Defendants

took what action against him in response. Plaintiff offers minimal elaboration in his Response: "His continued exposure to toxins, accelerating after he complained, is adverse action which, reasonable jurors may conclude, was motivated at least in part by Vartinelli's complaints about the same entity that retaliated." (Pl.'s Resp. 6, PgID 156.) But who continued to expose Plaintiff to toxins and how? Plaintiff does not endeavor even to identify which Defendants were aware of his "protected activity" or how he or she took what type of adverse action against him in response. In fact, Plaintiff attributes the alleged retaliatory conduct to an "entity." In order to address such a claim, the Court would be required to hypothesize which Defendants Plaintiff might be claiming retaliated against him and further hypothesize about how they might have done so. It is widely accepted that issues "adverted to . . . in a perfunctory manner, unaccompanied by some effort at developed argumentation," are deemed waived. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 774 (E.D. Mich. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

Even were the Court to hypothesize such a claim here, Plaintiff's allegations fall drastically short of describing the personal involvement of any of the individual Defendants in such retaliatory conduct. For the same reasons discussed *supra*

32

regarding Plaintiff's Eight Amendment claim, any First Amendment retaliation claim that could be gleaned from the Complaint would fall well short of satisfying the *Twombly/Iqbal* plausibility standard as to the personal involvement of any of the individual Defendants in such a claim. "Plaintiff[] ha[s] not, therefore, carried [his] burden of showing that the individual defendants are not entitled to qualified immunity from liability in their individual capacities." *Harvey*, 453 F. App'x at 564.

### D. Plaintiff Has Failed to Adequately Allege a Municipal Liability Claim Against Aramark

A municipality can be held liable under § 1983 where it is shown that a municipal custom or policy is the driving force behind the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("The language [of § 1983] plainly imposes liability on a government that, under color of some official policy, "causes" an employee to violate another's constitutional rights."). "To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff asserting a § 1983 claim on the basis of municipal custom or policy must identify the policy, connect the policy to the municipality, and show that the specific injury at issue was caused by the execution of that policy. *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). The causal link must be strong enough to support

a finding that the defendants' deliberate conduct can be deemed the "moving force" behind the violation. *Id.* (quoting *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001)). "These stringent standards are 'necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*.'" *Id.* (emphasis in original) (quoting *Doe v. Claiborne County Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996)).

In *Thomas*, the Sixth Circuit identified four ways a plaintiff may prove the existence of an illegal policy or custom. 398 F.3d at 429. The plaintiff can point to (1) the government's legislative enactments or official policies; (2) actions by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom or practice of tolerating the violation of federal rights by its officers or agents. *Id.* Thus, to state a claim against Aramark, Plaintiff must identify official policies, actions of officials with final decision-making authority, a policy of inadequate training or supervision, or a custom or practice of tolerating the violation of federal rights. Where no formal written policy exists, the critical inquiry is whether there is a policy or custom that although not explicitly authorized "is so permanent and well settled as to constitute a custom or usage with the force of law." *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010) (quoting *McClendon v. City of Detroit*, 255 F. App'x 980, 982 (6th Cir. 2007)).

Plaintiff does not plead a separate municipal liability claim in his Complaint and does not even mention a policy claim against Aramark in his Response, let alone identify any Aramark policy or practice or explain how it was the "moving force" behind the alleged violations of Plaintiff's constitutional rights. As discussed *supra* at Note 3, any policy claim against Aramark is inadequately developed and deemed waived. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, like here, are deemed waived." *Hanson v. Madison County Detention Center*, 736 F. App'x 521, 541 (6th Cir. 2018).

### E. Given the Dismissal of Plaintiff's Federal Claims, the Court Declines Supplemental Jurisdiction Over Plaintiff's State Law Claims

Given the absence of a viable federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice. "Once the district court dismissed all of the claims over which it had original jurisdiction, it acted squarely within its discretion by declining supplemental jurisdiction over the remaining IIED claim and dismissing it without prejudice." *Booker v. City of Beachwood*, 451 F. App'x 521, 522-23 (6th Cir. 2011) (citing 28 U.S.C. § 1367(c)(3)). "When, as here, 'all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'" *Id*. (quoting *Musson Theatrical, Inc. v. Fed. Express Corp*., 89 F.3d 1244, 1254–55 (6th Cir. 1996)). Indeed, in his Response Plaintiff agrees that this may be the

appropriate resolution of his state law claims should his federal claims be dismissed.

## IV.    CONCLUSION

The individual Aramark Defendants can be liable under § 1983 only upon a showing that they "either encouraged the specific incident[s] of misconduct or in some other way directly participated in [them]." *Harvey*, 453 F. App'x at 563 (alterations added).  Plaintiff's Complaint contains no allegations plausibly suggesting that any of the individual Defendants had any personal involvement in the allergen exposures underlying the six grievances that are the subject of his Complaint.  Indeed, Plaintiff's Complaint contains no factual content suggesting that any of the individual Defendants ever personally served him or exposed him to peanut butter or fish or approved of or acquiesced in others doing so.   In fact, the Complaint and its attachments suggest just the opposite – that the Defendants did attempt to isolate Plaintiff from such exposures  and responded appropriately in every instance in which Plaintiff was exposed despite these efforts.  Nor has Plaintiff pleaded any factual basis for a supervisory policy claim against Aramark.

Accordingly, Defendants' Motion to Dismiss is GRANTED.  Plaintiff's federal constitutional claims asserted under § 1983 (Count I) are DISMISSED WITH PREJUDICE.  Plaintiff's state law claims asserting intentional infliction of emotional

distress (Count II) and negligence (Count III) are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: March 28, 2019